UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TROY G. HARRIS,<br><br>        Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>        Respondent. | Case No. 1:10-cv-00507-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Petitioner Troy Harris' ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed on October 9, 2010. The Court has fully reviewed and considered the Petition for Review, the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental

**MEMORANDUM DECISION AND ORDER - 1**

Security Income on September 18, 2007, amending his date of alleged disability to August 14, 2007. In his petition, Petitioner alleged disability due to neck and back pain as well as psychological and sleeping disorders. The application was denied initially and on reconsideration, and a hearing was held before before Administrative Law Judge ("ALJ") Robin Henrie on April 14, 2010. After hearing testimony from Petitioner and Vocational Expert John F. Hurst, M.S., ALJ Henrie issued a decision finding Petitioner not disabled on May 11, 2010. Petitioner timely requested review by the Appeals Council, which denied his request for review on August 10, 2010.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was forty-five years of age. Petitioner completed a high school education. Due to his incarceration for fifteen years prior to his release date of August 14, 2007, Petitioner has no prior work experience.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether the claimant suffers from a severe

**MEMORANDUM DECISION AND ORDER - 2**

impairment. The ALJ found Petitioner's degenerative disc disease of the lumbar and cervical spine, as well as his adjustment disorder with depressed mood and generalized anxiety disorder, severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments do not meet or equal the criteria for any listed impairments, having specifically considered Listing 12.04 and 12.06 for his mood disorders and anxiety disorder. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner had no past relevant work, and therefore proceeded to step five. If a claimant demonstrates an inability to perform past relevant work, or in this case has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The Commissioner concluded that Petitioner has the RFC to perform the full range of light unskilled work, with limitations to accommodate Petitioner's physical and psychological impairments.

**STANDARD OF REVIEW**

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552,

565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

# DISCUSSION

Petitioner believes the ALJ erred at step four in his assessment of Petitioner's RFC. Specifically, Petitioner objects to the ALJ's finding that Petitioner was not fully credible, and the ALJ's evaluation of the medical evidence of record. Finally, Petitioner contends that the ALJ should have developed the record more fully due to the lack of medical evidence. Each of these assignments of error will be discussed in turn.

1.  **Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of a claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Although the ALJ accepted the medical evidence indicating Petitioner suffered from degenerative disc disease and psychological impairments, the ALJ found little objective bases to support Petitioner's alleged severe functional limitations due to his impairments. First, the ALJ cited the lack of medical evidence. Despite having suffered

injuries in two car accidents in 1981 and 1982, both of which were prior to his incarceration, and experiencing physical attacks while in prison, medical records maintained while Petitioner was incarcerated contain no indication that Petitioner was treated for any symptoms related to pain in his back or neck. (AR 280– 85.) Moreover, after Petitioner's release from prison in August of 2007, he sought no treatment for pain and was not taking any pain medication whatsoever, including over the counter pain medication. (AR 52, 294, 300.)

Petitioner underwent a consultative examination by Dr. Hill, an orthopedist. Dr. Hill found Petitioner had full range of motion, strength of 5/5 throughout, normal reflexes, the ability to ambulate without pain, and no physical limitations other than a finding that Petitioner would need to change positions as needed for pain management and he would be limited to lifting or carrying no more than fifty pounds. (AR 293–95.) At the hearing, Petitioner's counsel conceded that Petitioner's physical limitations would not rule out full-time employment, but would limit him to some types of medium work, or light or sedentary work. (AR 45–46.) Petitioner's physical limitations and subjective complaints of pain were therefore not the basis for Petitioner's appeal.

Instead, Petitioner focused largely upon his mental impairments. (Pet. Brief at 6, AR 324.) Petitioner reported poor sleep necessitating naps throughout the day, fatigue, depression, and anxiety due to his long incarceration and social isolation while in prison, precluding him from working a full work day. The ALJ discounted Petitioner's credibility

**MEMORANDUM DECISION AND ORDER - 8**

on the basis that the medical evidence, lack of treatment despite such allegedly severe symptoms, and Petitioner's activities of daily living suggested Petitioner could function at a higher level than he claimed.

Donald Whitley II, Ph.D., performed a consultative psychological exam of Petitioner on August 7, 2008. During the exam, Dr. Whitley noted that Petitioner reported sleep disturbances since being released from prison, along with anxiety and depression. (AR 278.) However, Dr. Whitley noted Petitioner had no treatment, either in prison or since his release, for his mental health problems, and was never hospitalized or admitted to the emergency room. (AR 288.) Petitioner reported that he was told by potential employers he would be ineligible to work until 2014 due to his criminal history. (AR 288.) Dr. Whitley noted no problems with concentration, memory, or comprehension, and he was oriented to time, place and person.

Dr. Whitley's ultimate conclusion was that, while Petitioner certainly has some depression, it appeared to be situational. Petitioner had the ability to manage his own finances, drive, perform activities of daily living; he acted socially appropriate; and generally, he had good understanding of the questions asked of him. Dr. Whitley thought that it "would be appropriate for vocational rehabilitation to be involved with [Petitioner] in helping him develop skills and focus to jobs." (AR 292.)

The only other mental health record of any significance is a mental health assessment given by Ted Warstadt, M.S., on March 25, 2009, which the ALJ considered.

(AR 23, 302–03.) Although Mr. Warstadt determined Petitioner was suffering from adjustment disorder with depressed mood, he reached the opinion that Petitioner's basic living skills, appearance and hygiene, speech, and perceptions were all within normal limits. (AR 302.) Mr. Warstadt recommended social services for assisting Petitioner with his feelings of depression and hopelessness. Thus, the medical evidence in the record concerning Petitioner's mental impairments provide substantial evidence for the ALJ's determination that Petitioner, perhaps with appropriate assistance, would be able to work.

Second, the ALJ discounted Petitioner's credibility based upon the lack of treatment after Petitioner's release from prison in August of 2007. Despite reporting severe limitations due to his metal impairments, the first record of any treatment for his psychological impairments is a notation of medication prescriptions from December of 2009. (AR 300.) Although the ALJ held the record open at the conclusion of the hearing so that Petitioner could submit his mental health treatment records, the only record submitted was the medication record dated December 5, 2009, and an "encounter note" dated April 27, 2010, from Region 6 Mental Health. (AR 299–305.) The lack of treatment measures taken by Petitioner to alleviate his symptoms is a legitimate factor for the ALJ to consider when making a credibility determination.

Last, the ALJ discounted Petitioner's credibility based upon Petitioner's self reports of his daily activities. The ALJ noted that Petitioner could care for his personal needs; prepare simple meals; perform household chores, including laundry and ironing;

**MEMORANDUM DECISION AND ORDER - 10**

watch television; manage his finances; drive; shop; and, visit with friends. (AR 24, 57.) The ALJ further cited that Petitioner admitted to consistently looking for and applying for work after his release from prison in August of 2007. (AR 24, 50.) The reports from Dr. Whitley and Mr. Warstadt support the ALJ's conclusion that Petitioner's activities suggested his limitations were not as severe as Petitioner reported.

Petitioner argues that the ALJ erred by ignoring or overlooking the intermittent nature of his activities of daily living, and his inability to consistently perform such activities on a sustained basis. However, the Court perceives no error. First, as discussed above and as noted by the ALJ, the record shows that, despite debilitating symptoms reported by Petitioner, there is no record of ongoing treatment after his alleged onset date of disability. Second, there is evidence in the record indicating Petitioner's ability to perform household chores and other daily activities on a much more consistent and sustained basis than is being claimed. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although the evidence of Burch's daily activities may also admit of an interpretation more favorable to Burch, the ALJ's interpretation was rational, and '[w]e must uphold the AL's decision where the evidence is susceptible to more than one rational interpretation.'"). The case in point is Petitioner's consistent ability to look for and apply for jobs on a regular basis, as well as the conclusions drawn by Dr. Whitley and Mr. Warstadt.

Accordingly, there is substantial evidence in the record supporting the ALJ's

**MEMORANDUM DECISION AND ORDER - 11**

finding that Petitioner is not fully credible with respect to the limiting effects of his mental impairments.

2. **Medical Evidence**

The United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not bound to a physician's opinion about a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v.*

*Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)).

As an initial matter, a review of the record indicates that Dr. Whitley is considered an examining physician because Petitioner did not have an ongoing treatment relationship with Dr. Whitley. No other physician examined Petitioner. The Commissioner must provide "clear and convincing" reasons supported by substantial evidence in the record for rejecting the uncontradicted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 931 (9th Cir. 1995). Mr. Warstadt, as a social worker, is not considered an acceptable medical source, but his opinion is appropriately considered as an opinion of an "other non-medical source." *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224

The opinion evidence the ALJ rejected are the two GAF[1] scores of 50 given by Dr.

---

[1] GAF stands for Global Assessment Function.

**MEMORANDUM DECISION AND ORDER - 13**

Whitley on August 7, 2008, and by Mr. Warstadt on March 25, 2009. (AR 26, 286, 303.) According to the Diagnostic and Statistical Manual of Mental Disorders, a GAF score of 50 indicates a serious impairment in social and occupational functioning, *Escardlille v. Barnhart*, 2003 WL 21499999 at *6 (E.D. Pa. June 24, 2003), and an individual may or may not be able to work with a score in the 50 to 60 range. Nat'l Org. Of Social Security Claimants' Representatives, SOCIAL SECURITY PRACTICE GUIDE volume 5 § 40.02[2] at 40-24 (1999). The ALJ rejected the GAF scores of both Dr. Whitley and Mr. Warstadt on the grounds that the scores were not supported by Petitioner's activities of daily living, the lack of treatment, and the assessments of each practitioner, which the ALJ found inconsistent with a low GAF score. In addition, the ALJ found that the GAF score was an unreliable indicator of Petitioner's ability to perform work-related activities given the record as a whole.

The ALJ properly rejected Dr. Whitley's and Mr. Warstadt's opinions, based upon the GAF scores of 50, that Petitioner was unable to engage in employment-related activities. First, nothing in the assessments given by Dr. Whitley or Mr. Warstadt provide any support for such low scores other than Petitioner's subjective complaints, which, as discussed above, were properly discounted. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ may disregard physician's opinion premised on the subjective complaints of the claimant whom the ALJ properly finds not credible). In addition, the ALJ noted that, despite such a low GAF score, the record failed to indicate Petitioner

sought any further mental health treatment, he was not hospitalized for his condition, and he was not undergoing any ongoing treatment (considering the lack of treatment notes from Region 6 Mental Health, where Petitioner was supposedly receiving regular treatment). (*See* AR 304– 305.)[2]

Finally, the ALJ cited the inconsistency in Dr. Whitley's report as not reflective of such a low GAF score. Dr. Whitley's ultimate conclusion was that Petitioner has "possibly some sleep disturbance" and "some depression," which appears to be situational because of Petitioner's inability to find employment "because of his criminal history." But Dr. Whitley recommended "vocational rehabilitation . . . in helping him develop skills," without concluding that Petitioner could not work.

Accordingly, the Court finds that the ALJ properly discounted the medical and other opinion sources to the extent they were inconsistent with the ALJ's assessment of Petitioner's residual functional capacity. The Court finds the ALJ did not err in determining that Petitioner retained the residual functional capacity for light unskilled work, as restricted by Petitioner's documented physical and mental limitations. (*See* AR 21.)

3. **Duty to Develop the Record**

Petitioner argues that the ALJ's rejection of Dr. Whitley's and Mr. Warstadt's

---

[2] Petitioner was given an opportunity to supplement the record with his ongoing treatment records. Only one record of an "encounter note" dated April 27, 2010, was submitted by Petitioner's attorney.

**MEMORANDUM DECISION AND ORDER - 15**

opinion evidence—the GAF scores—left the ALJ with "nothing to support his findings." (Pet. Reply at 9, Dkt. 15.) It is true that the ALJ has an independent duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan*, 242 F.3d at 1150. If the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence, the ALJ has a duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998).

Here, where the record regarding Petitioner's mental health treatment was potentially undeveloped, the ALJ kept the record open so that Petitioner could supplement the record with the full record from the Department of Health and Welfare. (AR 43, 92.) At that point, the ALJ satisfied his duty to more fully develop the record. *Tidwell*, 161 F.3d at 602 (holding that the ALJ adequately fulfilled his obligation to develop the record by keeping it open so that the claimant's physician could submit supplemental responses.).

No other issues were brought to the ALJ's attention, and the ALJ made no determination that the record otherwise was inadequate or ambiguous to allow for proper evaluation of the evidence. Accordingly, the Court finds no error with the ALJ's

**MEMORANDUM DECISION AND ORDER - 16**

development of the record.

## CONCLUSION

The Court concludes that the ALJ developed the record fully and fairly with respect to Petitioner's mental impairments. In addition, the ALJ's assessment of Petitioner's physical and mental impairments is free of legal error and supported by substantial evidence in the record.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: **March 08, 2012**

Honorable Candy W. Dale
United States Magistrate Judge